IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:25-CV-505-ACC-RMN

**SCOTTSDALE INSURANCE COMPANY,**

    Plaintiff,

v.

**IDRIVE INVESTMENTS #5, LLC and WOODY AUBRIN,**

    Defendants.

_____/

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Scottsdale Insurance Company ("Scottsdale"), files this Amended Complaint for Declaratory Judgment against Defendants, IDrive Investments #5, LLC ("IDrive") and Woody Aubrin ("Mr. Aubrin"), and asks the Court to adjudicate the parties' respective rights under Policy Number CPS7995246 (the "Policy"), a commercial general liability insurance policy issued by Scottsdale to IDrive.

### Nature of the Claim

1.    This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure for the purpose of construing and interpreting the terms of an insurance contract and for a

determination of the rights and obligations, if any, of the parties arising from the insurance contract.

2. Specifically, Scottsdale requests a declaratory judgment that the Policy does not provide defense and/or indemnity coverage for the claims made against IDrive in the lawsuit styled *Woody Aubrin v. IDrive Investments #5, LLC, et al.*, Case No. 2024-CA-01626-O, currently pending in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida (the "Underlying Lawsuit").

3. An actual controversy exists among the parties regarding the issue of coverage under the Policy and the rights and obligations, if any, of the parties arising from the Policy.

4. All conditions precedent to filing this action have been performed or have occurred.

## Parties

5. At all relevant times, Scottsdale was, and still is, a corporation organized and existing under the laws of the state of Ohio with its principal place of business in Columbus, Ohio. Scottsdale is a citizen of Ohio for diversity jurisdiction purposes. Scottsdale is eligible to do business and to issue insurance policies in the state of Florida pursuant to the Florida Surplus Lines Law, § 626.913, Fla. Stat., *et seq.*

6. At all relevant times, IDrive was, and still is, a foreign limited liability company organized and existing under the laws of the state of Delaware with its principal place of business in Orange County, Florida. At all relevant times, IDrive's only member was, and still is, Arvind Nandu, who is a natural person and a citizen of Orange County, Florida.

7. At all relevant times, Mr. Aubrin was, and still is, a natural person and a citizen of Orange County, Florida.

## Jurisdiction and Venue

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Scottsdale and the Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest, attorney's fees, and costs.

9. As to complete diversity among the parties, Scottsdale is a citizen of Ohio and the Defendants are citizens of Florida.

10. As to the amount in controversy, Mr. Aubrin has incurred medical expenses exceeding $1,000,000.00 to date for treatment of his injuries from the shooting incident which forms the basis of the Underlying Lawsuit, the Policy has an applicable limit of $1,000,000.00, and Mr. Aubrin has demanded $1,000,000.00 from Scottsdale to settle the Underlying Lawsuit.

11.     Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and/or all defendants reside in the state of Florida and at least one defendant resides in this District.

### The Insurance Policy

12.     The Policy was issued by Scottsdale to IDrive for the period of May 9, 2024 to May 9, 2025. A certified copy of the Policy is attached hereto as **Exhibit "A."**

13.     Subject to certain terms, conditions, limitations, and exclusions, the Policy provides commercial general liability coverage to IDrive. (Ex. A at Form OPS-D-1-0117 (01-21), Page 1 of 1).

14.     The Policy contains a relevant limit of insurance of $1,000,000 for any one occurrence for Bodily Injury and Property Damage Liability (i.e., Coverage A), subject to a $2,000,000 General Aggregate limit. (*Id.* at Form CLS-SD-1L (8-01), Page 1 of 1).

15.     The Policy's provision titled "**SECTION I – COVERAGES**" provides the following insuring agreement for "**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**" (the "Coverage A Insuring Agreement"):

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for the damages is limited as described in Section **III** – Limits of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

                                           * * *

(*Id.* at Form CG 00 01 04 13, Page 1 of 16).

16. Notwithstanding, the Policy contains an endorsement titled "**LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION**" (the "Designated Premises Limitation"), which modifies the Coverage A Insuring Agreement and provides, in relevant part, as follows:

5

> **A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01**, the provisions under this Paragraph **A.** apply:
>
> **1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:
>
> **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:
>
> **(1)** The "bodily injury" or "property damage":
>
> **(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or
>
> **(b)** Arises out of the project or operation shown in the Schedule[.]

(*Id.* at Form CG 21 44 04 17, Page 1 of 3).

17.     The Commercial General Liability Coverage Form number under the Policy is CG 00 01. (*Id.* at Form CG 00 01 04 13, Page 1 of 16).

18.     The Designated Premises Limitation's "Schedule" states one "**Premises:** 7547 INTERNATIONAL DR[,] ORLANDO[,] FL 32819 ORANGE[.]" (*Id.*). "**Project Or Operation**" in the Schedule is listed as "OFFICE/WAREHOUSE OWNER[.]" (*Id.* at Form CG 21 44 04 17, Page 1 of 3).

19.     The Policy also contains a "**SCHEDULE OF LOCATIONS**" declarations page, which lists "7543 INTERNATIONAL DR[,] ORLANDO[,] FL 32819" as a "Designated Premises[.]" (*Id.* at Form UTS-SP-3 08-96, Page 1 of 1).

6

20. Under the Policy's "**COMMERCIAL GENERAL LIABILITY COVERAGE PART EXTENSION OF SUPPLEMENTAL DECLARATIONS**[,]" (the "Supplemental Declarations") both "Designated Premises"—7547 International Drive, Orlando, Florida 32819 and 7543 International Drive, Orlando, Florida—are described as "VACANT BUILDINGS – NOT FACTORIES – OTHER THAN NOT-FOR-PROFIT[.]" (*Id.* at Form CLS-SP-1L (10-93)).

21. Finally, as relevant here, the Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at Form CG 00 01 04 13, Page 13 of 16).

## The Underlying Lawsuit

22. On or about December 2, 2024, Mr. Aubrin filed the Underlying Lawsuit against IDrive and Luxe Entertainment LLC ("Luxe"), which is styled *Woody Aubrin v. IDrive Investments #5, LLC, et al.*, Case No. 2024-CA-01626-O, and is currently pending in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida.

23. On or about April 3, 2025, Mr. Aubrin filed an Amended Complaint in the Underlying Lawsuit (the "Underlying Complaint"), which named R.E. Dowdy #1 LLC ("Dowdy") as a new defendant and dropped Mr. Aubin's claims

against Luxe. A copy of the Underlying Complaint is attached hereto as **Exhibit "B."**

24. On or about April 8, 2025, the court in the Undrlying Lawsuit deemed the Underlying Complaint operative.

25. In the Underlying Complaint, Mr. Aubrin alleges that, at all material times, IDrive "was the landlord and/or owner of a shopping plaza located at 7511 International Drive, Orlando, Florida where non-party [Luxe] operated the Cosmo Hookah Lounge." (Ex. B at ¶ 7).

26. Mr. Aubrin specifically claims that the Cosmo Hookah Louge operated by Lux was itself "located at 7513 International Drive, Orlando, Florida[.]" (*Id.* at ¶ 9).

27. Mr. Aubrin also alleges that, at all material times, Dowdy "was the landowner of a shopping center plaza located at 7467 International Drive, Orlando, Florida where [non-party] O'Shucks Karaoke Bar operated a bar." (*Id.* at ¶ 8).

28. According to Mr. Aubrin, on or about September 30, 2024, Mr. Aubrin "was lawfully on Defendant [IDrive's] premises as a business invitee of Defendants' premises while patronizing the Cosmo Hookah Lounge." (*Id.* at ¶ 10).

29. Mr. Aubrin maintains that, on the same night, he was "lawfully parked on [Dowdy's] parking lot which was shared by Defendants" and "near

his vehicle located on [Dowdy's] premises in front of O'Shucks Karaoke Bar" when two assailants shot him "while they were … on [IDrive's] premises" (the "Incident"). (Ex. B at ¶¶ 10–14).

30. Mr. Aubrin further claims that IDrive and Dowdy "negligently permitted [the] assailants to enter the subject business premises … where [the] assault and/or attack on [Mr. Aubrin] began." (*Id.* at ¶ 13).

31. Mr. Aubrin attaches a screenshot from security camera footage of the Incident (*Id.* at ¶ 14), which demonstrates that Mr. Aubrin was shot just outside of the O'Shucks Karaoke Bar located at 7467 International Drive, Orlando, Florida 32819 by assailants standing in the driveway between O'Shucks and the North facing sidewall of the shopping plaza located at 7511 International Drive, Orlando, Florida, in which Luxe operated the Cosmo Hookah Lounge in the unit with an address of 7513 International Drive, Orlando, Florida. A copy of the full security video of the Incident (the "Video") is attached hereto as **Exhibit "C."**

32. Mr. Aubrin brings one cause of action for negligent security against IDrive in Count I of the Underlying Complaint. Therein, Mr. Aubrin alleges that IDrive owed patrons various security-based duties of care which it allegedly breached by, among other things, failing to provide security personnel and failing to provide adequate security generally. Mr. Aubrin avers that IDrive's purported negligence was the "direct and proximate" cause of the Incident, which resulted

in "permanent and continuing" bodily injuries, medical bills, pain, disfigurement, and other damages. (Ex. B at ¶¶ 21–24).

33. Scottsdale is currently defending IDrive in the Underlying Lawsuit pursuant to a complete reservation of rights under the Policy and Florida law.

## COUNT I – DECLARATORY JUDGMENT
### (Designated Premises Limitation)

34. Scottsdale adopts and incorporates by reference the allegations set forth in paragraphs 1–33 above as though completely and fully set forth herein.

35. There is an actual, present, and existing controversy among the parties to this action regarding whether coverage is afforded under the Policy, for defense and indemnity, for the claims made and damages sought IDrive in the Underlying Lawsuit.

36. Pursuant to 28 U.S.C. § 2201, *et seq.*, Scottsdale seeks a judgment declaring that it does not have a duty to defend or a duty to indemnify IDrive under the Policy for the claims and alleged damages that are the subject of the Underlying Complaint due to the Designated Premises Limitation.

37. The Policy's Designated Premises Limitation expressly provides that "[t]his insurance applies to 'bodily injury' ... caused by an 'occurrence' that takes place in the 'coverage territory' only if ... [t]he 'bodily injury' ... [o]ccurs on the premises shown in the Schedule or the grounds and structures appurtenant to

10

those premises; or … [a]rises out of the project or operation shown in the Schedule[.]"

38. The Designated Premises Limitation's Schedule includes only one "**Premises:** 7547 INTERNATIONAL DR[,] ORLANDO[,] FL 32819 ORANGE" and the Policy's Schedule of Locations declarations page additionally lists "7543 INTERNATIONAL DR[,] ORLANDO[,] FL 32819" (collectively, the "Designated Premises").

39. The Designated Premises Limitation's Schedule includes only one "**Project Or Operation:** OFFICE/WAREHOUSE OWNER[,]" which refers to the Designated Premises that are themselves described by the Supplemental Declarations as "VACANT BUILDINGS – NOT FACTORIES - OTHER THAN NOT-FOR-PROFIT[.]"

40. Mr. Aubrin alleges in the Underlying Complaint that the Incident occurred between IDrive's premises and Dowdy's premises and describes only four premises/addresses: (1) the "shopping plaza located at 7511 International Drive, Orlando, Florida"; (2) the Cosmo Hookah Lounge specifically located at "7513 International Drive, Orlando, Florida"; (3) the "shopping plaza located at 7467 International Drive, Orlando, Florida"; and (4) the parking lot in front of O'Shucks Karaoke Bar, also located at 7464 International Drive.

41. Attached to the Underlying Complaint as an exhibit is a screenshot from security camera footage of the Incident, which shows Mr. Aubrin was standing just outside of the O'Shucks Karaoke Bar located at 7467 International Drive, Orlando, Florida 32819 when he was shot by assailants standing in the driveway between O'Shucks and the North facing sidewall of a shopping plaza located at 7511 International Drive, Orlando, Florida, in which Luxe operated the Cosmo Hookah Lounge in the unit with an address of 7513 International Drive, Orlando, Florida.

42. Mr. Aubrin's own allegations make clear that his purported injuries did not take place on the Policy's Designated Premises or "the grounds and structures appurtenant to" the same.

43. Moreover, the Underlying Complaint's allegations do not include any suggestion that the Incident arose out of the project or operation shown in the Designated Premises Limitation's Schedule, which is "OFFICE/WAREHOUSE OWNER" of the Designated Premises, described by the Policy's Supplemental Declarations as "VACANT BUILDINGS – NOT FACTORIES – OTHER THAN NOT-FOR-PROFIT[.]"

44. Accordingly, the Underlying Complaint's allegations do not trigger coverage under the Coverage A Insuring Agreement as amended by the Policy's

Designated Premises Limitation, and Scottsdale has no duty to defend IDrive in the Underlying Lawsuit.

45. In addition, insofar as any undisputed extrinsic facts exist which, if pled, would place the claims against IDrive outside of the scope of the Policy's coverage, Scottsdale was and is entitled to rely on such facts in evaluating its duty to defend. *BBG Design Build, LLC v. S. Owners Ins. Co.*, 820 Fed. Appx. 962, 965 (11th Cir. 2020); *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014); *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101, 1103 (Fla. 4th DCA 1995).

46. No defense was or is available to IDrive under the Policy for the claims made in the Underlying Lawsuit premised on the specific, unpled details of the Incident captured in full by a video, attached to Scottsdale's original complaint in this matter as Exhibit C and incorporated herein by reference.

47. The video demonstrates that: (1) the Incident did not occur on the Policy's Designated Premises or the grounds and structures appurtenant thereto; and (2) had no connection with the ownership of the Designated Premises.

48. It follows that Scottsdale has no duty to defend or to indemnify IDrive for the claims made and damages sought against it in the Underlying Lawsuit, as the duty to indemnify cannot exist in the absence of a duty to defend.

*See Mt. Hawley Ins. Co. v. Miami River Port Terminal, LLC,* 228 F. Supp. 3d 1313, 1326 (S.D. Fla.), *aff'd,* 713 F. App'x 951 (11th Cir. 2017).

49. Accordingly, Scottsdale seeks a judgment declaring that it does not have a duty to defend or a duty to indemnify IDrive under the Policy for the claims and damages that are the subject of the Underlying Complaint based on the Designated Premises Limitation.

50. Scottsdale pleads all other conditions, terms, warranties, limits, definitions, and exclusions of the Policy that may also be found to apply.

**WHEREFORE,** Scottsdale respectfully requests that this Honorable Court enter a judgment declaring the rights and obligations of the parties under the Policy, including but not limited to the following:

(a) Scottsdale has no duty under the Policy to defend IDrive in the Underlying Lawsuit;

(b) Scottsdale has no duty under the Policy to indemnify IDrive for any damages awarded to Mr. Aubrin in the Underlying Lawsuit;

(c) Upon a declaration by the Court of no duty to defend, Scottsdale has the right to withdraw its defense of IDrive in the Underlying Lawsuit; and

(d) Granting Scottsdale any further relief this Court deems proper.

Dated: April 21, 2025

Respectfully submitted,

**PHELPS DUNBAR LLP**

/s/ *Patricia A. McLean*
Patricia A. McLean, Esq., FBN: 129143
patricia.mclean@phelps.com
Lucas H. Goda, Esq., FBN: 1041085
lucas.goda@phelps.com
100 South Ashley Drive, Suite 2000
Tampa, Florida 33602-5311
Telephone: (813) 472-7550
Facsimile: (813) 472-7570

***Counsel for Plaintiff, Scottsdale Insurance Company***